## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM C. TRAUB,      :      **CIVIL NO: 3:CV-11-1369**
                          :

    **Plaintiff,**      :
                          :      **(Judge Nealon)**

      **v.**           :
                          :      **(Magistrate Judge Carlson)**

**MICHAEL J. ASTRUE,**      :
**COMM'R OF THE**      :
**SOCIAL SECURITY**      :
**ADMINISTRATION,**      :
                          :
    **Defendant.**      :

## REPORT AND RECOMMENDATION

### I.    Introduction and Procedural History

In this Social Security appeal, we are called upon to assess the decision of an administrative law judge (ALJ), which denied the Plaintiff's application for disability benefits. That ALJ, in turn, was presented with a medical and evidentiary record marked by contradictory proof relating to the alleged disability of the Plaintiff. Presented with this conflicting and equivocal proof, the ALJ found that the opinion of Traub's treating physician that Traub was disabled conflicted with the views of other doctors, with objective testing data, with Traub's own statements, and with the treating physician's own medical notes. We conclude that there was substantial

evidence supporting these finding, and, therefore, recommend that the decision of the ALJ be affirmed.

William C. Traub (the "Plaintiff") filed a Complaint on July 22, 2011, appealing the decision denying his application for Social Security disability benefits. (Doc. 1)  As of May 24, 2011, the Social Security Administration found the Plaintiff to be disabled and awarded him Supplemental Security Income.  The Complaint names as Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant").  (Doc. 1)  On September 22, 2011, Defendant filed an Answer to the Complaint.  (Doc. 6)  Defendant also filed the administrative record.  (Doc. 7)[1]  On November 4, 2011, the Plaintiff filed his Brief in Support of his Complaint.  (Doc. 8)  After the Court granted an extension, on January 6, 2012, the Defendant filed his Brief.  (Doc. 11)

The Plaintiff filed an initial application for Social Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") on April 15, 2009, alleging disability since September 11, 2007.  (Doc. 7, pp. 97-110)  This application was denied by the agency on September 11, 2009.  (Id. at pp. 31-40)  The Plaintiff filed

---

[1] Our citations to the administrative record, found at Doc. 7, reflect the docket number followed by the specific Bates stamped page found on the bottom right of the of record.

a written request for a hearing on October 15, 2009. (Id. at pp. 41-44) The Plaintiff

waived in writing his right to personally appear and testify at a hearing. (Id. at p. 45)

On June 10, 2010, the ALJ issued an Order denying Plaintiff's application for

benefits. (Id. at pp. 12-28) The Plaintiff appealed the ALJ's decision to the Appeals

Council.  (Id. at pp. 7-8)  Plaintiff also filed another request for a hearing by

administrative law judge which was treated as a request for an appeal to the Appeals

Council. (Id. at p. 9) On May 26, 2011, the Appeals Council denied the Plaintiff's

appeal.  (Id. at pp. 1-6)   On July 8, 2010, Plaintiff filed an appointment of

representative form for Attorney Thomas C. Cook.  The Plaintiff then initiated the

instant civil action in this Court.  (Doc. 1)

For the reasons set forth below, we recommend that the Plaintiff's appeal from

the decision of the Commissioner of Social Security denying his claim for SSI and

DIB benefits, be denied.

## II.    The Disability Evaluation Process, the Evidence and the ALJ Decision

A five step evaluation process is used to determine if a person is eligible for

disability benefits. See 20 C.F.R. § 404.1520, See also Plummer v. Apfel, 186 F.3d

422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not

disabled at any point in the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act. (Doc. 7, pp. 15-28)  The ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2008.  (*Id*. at p. 17) At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful work activity at any time since, September 11, 2007, the alleged onset date of his disability.  (Id.)  At step two, the ALJ concluded that the Plaintiff had the following impairments:   diabetes mellitus, degenerative joint disease of the left knee, osteoarthritis of the left knee, major depressive disorder, recurrent, moderate, generalized anxiety disorder and cognitive disorder; and that they were severe within the meaning of the Regulations.  (Id. at pp. 17-18)  The ALJ also noted that the

Plaintiff alleges disability due to headaches, hypertension, rashes on his upper and lower extremities and buttocks and fibromyalgia, but he found them to be non-severe. (Id. at 18-19)

At step three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or medically equal any criteria in Listings 1.00, 9.00 or 12.00 or any other listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926.  (Id. at p. 19)  The ALJ found that the Plaintiff has the residual functional capacity to perform lightwork as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  (Id. at p. 22)

The ALJ further determined that Plaintiff should be limited to simple, routine, low stress work with no deadlines or fast paced production, can have no interaction with the public, no more than occasional interaction with co-workers and supervisors, and can have no teamwork jobs. (Id.) The ALJ determined that the Plaintiff is unable to perform any past relevant work.  See 20 C.F.R. §§ 404.1563(g) and 416.963.  (Id. at p. 27)  The ALJ further determined that transferability of job skills is not material to determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled," whether or not claimant has transferable job skills.  See SSR 82-41 and 20 C.F.R. § 404, Subpart P, Appendix  2. (Id.)  The ALJ then concluded that, considering the Plaintiff"s age,

education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  See 20 C.F.R. §§ 404.1569, 416.969(a), 416.969, and 416.969 (a). (Id.).  At step five, the ALJ found that the Plaintiff has not been under a disability, as defined in the Act, at any time from September 11, 2007, the alleged onset date, through the date of the decision, June 10, 2010. See 20 C.F.R. §§ 404.1520(g) and 416.920(g).  (Id. at p. 28)

The ALJ reached these determinations against the following factual background:  The Plaintiff was born on August 9, 1970, and was thirty-seven (37) years old on the alleged disability onset date.  (Doc. 7, p. 27)  The ALJ considered Plaintiff "a younger individual" under the Regulations.  20 C.F.R. §§ 404.1563 and 416.963.   The Plaintiff has at least a high school education and is able to communicate in English.  (Id.)  See 20 C.F.R. §§ 404.1564 and 416.964.

The Plaintiff has past relevant work experience as a cleaner for a home restoration service, bricklayer helper, construction worker and maintenance worker in an apartment complex.  (Id. at p. 27)  The ALJ noted that Plaintiff has an inconsistent and sparse work history which does not enhance the credibility of Plaintiff's subjective allegations, noting "[t]he earnings records in this case simply do not paint the picture of an individual with a strong motivation to work."  (Id. at p.

25) The Plaintiff has not engaged in substantial gainful activity since September 11, 2007, the alleged disability onset date. (Id. at p. 15)

In his daily activities, the Plaintiff reported that he has very limited activities of daily living. (Id. at pp. 141-152, 171-179)  However, Plaintiff reported that he is able to feed his dogs, perform personal care, prepare simple meals, do laundry weekly and leaves home daily. (Id.)  Plaintiff further reported that he is able to go out alone and drive including to doctor's appointments. (Id.)  Plaintiff also reported moderate difficulties in social functioning.  Plaintiff reported feeling depressed and taking Paxil for irritability since an automobile accident in September, 2007. (Id. at p. 218-220) Plaintiff also reports feeling nervous in crowds, fears people talking about him and constant worrying. (Id.)  In September 2008, Dr. John De Carle diagnosed the Plaintiff with major depressive disorder, generalized anxiety disorder and cognitive disorder. (Id.)  Dr. DeCarle gave Plaintiff a global assessment of functioning ("GAF") score of 55.[2]

---

[2] A GAF score, or a Global Assessment Functioning scale, takes into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness and is not supposed to include the consideration of impairment in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision, 34, Washington, DC, American Psychiatric Association, 2000. ("DSM-IV-TR").  A GAF score between 51 to 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR

Dr. Dana Irwin also examined the Plaintiff in August 2009 and found that Plaintiff exhibited disruptive behavior to community and lawful society.  (Id. at p. 313-318.)  Dr. Irwin concluded that the Plaintiff experiences moderate limitations in his ability to interact with the public and co-workers and gave Plaintiff a GAF score of 58.  (Id.)  The records indicate a third medical examiner diagnosed the Plaintiff with major depressive disorder and a GAF score of 50 indicating serious impairment in social occupational or school functioning.  (Id. at p. 400)  However, the ALJ did not give great weight to the diagnosis as the report is not signed or dated by anyone. The ALJ further determined that this GAF assessment was not supported by any clinical or objective findings and it is inconsistent with the totality of evidence.  (Id. at p. 20)  Therefore, the ALJ concluded that the Plaintiff experiences moderate limitations in social functioning and can not have interaction with the public, no more than occasional interaction with co-workers and supervisors, and can not have teamwork jobs.  (Id.)

Plaintiff reported that he has moderate difficulties with regard to concentration, persistence or pace and an inability to remember things since the car accident in September 2007 and problems falling asleep.  (Id. at pp. 218-220)  Plaintiff further

---

moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  (Id.)

complained of a low energy level, decreased motivation and concentration and increased forgetfulness. (Id.) The evidence of record shows that Dr. Irwin determined that Plaintiff's ability to understand, remember and carry out short simple instructions or detailed instructions was not affected by his mental health impairments. (Id. at p. 313-318) Dr. Irwin also noted that the Plaintiff was alert, oriented and possessed adequate recall as he demonstrated intact immediate recall with a verbal test of calculations and he gave an average performance in a test of expressive language and general information. (Id.) Plaintiff was further given a test of analogies and scored in the average range. (Id.) Dr. Irwin further noted that the results of Plaintiff's tests were at higher than expected levels due to his abbreviated educational level. (Id.) Therefore, the ALJ concluded that the Plaintiff experiences moderate limitations in concentration, persistence or pace and is limited to simple, routine, low stress work with no deadlines or fast paced production or interaction with the public. (Id.)

The ALJ further concluded that although Plaintiff reported episodes of decompensation, the record is completely devoid of any records showing that Plaintiff experienced any episodes of decompensation.[3] (Id. at p. 21) The ALJ determined

---

[3] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities in daily living, maintaining social relationships, or maintaining concentration, persistence or pace. 20 C.F.R. § 404,

that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, schizophrenic, paranoid and other psychotic disorders; 12.04 mental retardation; and 12.06, somatoform disorders. (Id. at p. 19)  See 20 C.F.R. §§ 404.1520(d).  The Plaintiff was diagnosed by Dr, Sweetland with major depressive disorder, generalized anxiety disorder and cognitive disorder.  (Doc. 7, pp. 281-312)

In order to make the findings, the ALJ had to consider "paragraph B" criteria which are a set of impairment-related functional limitations which dictate that the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A "marked" limitation means more than moderate but less than extreme. "Repeated" episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months each lasting for at least two weeks.  See 20 C.F.R. §§ 404.1520(d).  Therefore, ALJ concluded that because Plaintiff's mental impairments do not cause at least two "marked" limitations

---

Subpt.. P, App. 1.

or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, "paragraph B" criteria are not satisfied.  (Doc. 7, pp. 21-22)

Because the "paragraph B" criteria were not met the ALJ also considered "paragraph C" criteria of Listing 12.04 which is additional functional criteria and determined that it was not satisfied.  (Id. at p. 21) See 20 C.F.R. §§ 404.1520(d).  The evidence of record does not reveal that Plaintiff has a medically documented history of chronic effective disorder of at least two years' duration which has caused more than a minimal limitation on his ability to perform basic work activities, with symptoms or signs currently attenuated by medication or psychosocial  support or experienced repeated episodes of decompensation.  (Id.)

The medical evidence of record discloses that Plaintiff was diagnosed with type II diabetes mellitus.  (Doc. 7, p. 286)  Plaintiff also has a diagnosis of degenerative joint disease of the left knee and arthritis.  (Doc. 7, p. 206)  Plaintiff has a history of left knee surgeries and reported pain after an automobile accident in September 2007. (Id.)  Plaintiff was diagnosed with osteoarthritis of the left knee and was prescribed a knee sleeve, narcotic pain medications and also participated in physical therapy. (Id. at p. 356)

Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, generalized anxiety and cognitive disorder.  (Id. at pp. 218-220) After the September

2007 automobile accident in which Plaintiff reported that he hit his head on the windshield, he complained of forgetfulness, decreased concentration and motivation, feeling nervous in crowds, fear of other talking about him, chronic worrying and daily panic attacks. (Id.) The Plaintiff was prescribed antidepressant and anti-anxiety medications by Dr. Sweetland, his treating physician, who has opined that Traub is disabled. (Id. at pp. 288-310)

However, Dr. Sweetland's findings were contradicted in a number of material respects by other evidence from numerous other medical sources. Dr. James Martin noted that Plaintiff had arthritis in both of his knees and his hips, but stated that the Plaintiff's symptoms were out of proportion to the physical findings of soft tissue tenderness and his behavior out of line with the physical findings, therefore, he did not recommend surgery, but recommended an injection which Plaintiff declined. (Id. at p 347-352) Dr. Martin further noted that Plaintiff did not experience any physical limitations. (Id.) Dr. Paul Sherbondy, in turn, examined the Plaintiff in October 2009 and noted that the Plaintiff's left knee is ligamentously stable with negative Lachman and normal global stability, no effusion and negative flexion circumduction test and no pain on range of motion of the hip. (Id. at pp. 356-360) Because the Plaintiff complained of daily pain that affects his mobility and that physical therapy, injections and knee braces were all ineffective, Dr. Sherbondy recommended a left knee

arthroscopy.  (Id.)  The state agency medical consultant, Dr. Fidelis Ejianreh also evaluated the evidence of record and concluded that the Plaintiff is capable of performing work at the sedentary exertional level and is capable of performing the mental demands of work-like activities.  (Id. at pp. 323-326)

It is against the background of this equivocal and contradictory medical proof that the ALJ made the determination that Traub had not carried his burden of proof in this matter. For the reasons set forth below, we find that there is substantial evidence supporting this finding.

### III.    Discussion

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her]
> physical or mental impairment or impairments are of such severity that
> [she] is not only unable to do [her] previous work but cannot, considering
> [her] age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or whether [she] would be
> hired if [she] applied for work.  For purposes of the preceding sentence
> (with respect to any individual), "work which exists in the national
> economy" means work which exists in significant numbers either in the
> region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process

to determine if a person is eligible for disability benefits.  See 20 C.F.R. § 404.1520.

See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that

a Plaintiff is disabled or not disabled at any point in the sequence, review does not

proceed any further.  See 20 C.F.R. § 404.1520.  As part of this analysis the ALJ must

sequentially determine: (1) whether the claimant is engaged in substantial gainful

activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's

impairment meets or equals a listed impairment; (4) whether the claimant's impairment

prevents the claimant from doing past relevant work; and (5) whether the claimant's

impairment prevents the claimant from doing any other work.  See 20 C.F.R. §

404.1520.  This disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Similarly, an ALJ's  determination regarding whether, and when, a person initially found to be disabled regains the capacity to work involves a seven-step analysis.  See 20 C.F.R. §416.994.  As part of this process, the ALJ must:  First, determine if the claimant suffered from medical conditions giving rise to an impairment; second, determine whether the claimant's medical condition improved at any time; third, assess whether this medical improvement affects the claimant's ability to work; fourth, ascertain whether any exceptions to the medical improvement rules apply; fifth, assess whether the claimant's current medical impairments are severe, taking into account the improvement in the claimant's condition; sixth, if the claimant's condition remains severe, but improved, the ALJ must then assess the claimant's residual functional capacity to perform some work; and seventh, the ALJ must decide whether  work exists that the claimant could perform given his residual functional capacity. Id.

Moreover, where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead, at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating  the credibility of the claimant's statements regarding his symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific

-17-

reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review.  In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also  Pierce v. Underwood, 487 U.S. 552 (1988).  It is less than a preponderance of the evidence but more than a mere scintilla of proof.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting

Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores

countervailing evidence or fails to resolve a conflict created by the evidence. Mason

v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed

factual record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the

evidence does not prevent [the decision] from being supported by substantial

evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

Moreover, in conducting this review we are cautioned that "an ALJ's findings based

on the credibility of the applicant are to be accorded great weight and deference,

particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th

Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801

(10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally

positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715,

2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the

ALJ's decision is supported by substantial evidence the court may not parse the record

but rather must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

**B.**     **The ALJ's Decision Was Supported By Substantial Evidence and Properly Evaluated Competing Medical Evidence and Assessments**

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed.  At the outset, this decision involved an assessment of conflicting and equivocal medical evidence, and an evaluation of competing, and occasionally contradictory, statements made by the Plaintiff regarding the extent of his disability.  This evidence showed that the Plaintiff's subjective complaints were in conflict, and were not fully supported by independent diagnostic evidence and testing. Since "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged," 42 U.S.C. § 423(d)(5)(A).

Here, in conducting this assessment, the ALJ found that the Plaintiff had not been under a disability within the meaning of the Social Security Act from September 11, 2007, through the date of decision, June 10, 2010.  (Doc. 7, p. 15)  The Plaintiff

contests this finding and argues that the ALJ erred in failing to give his treating physician's opinion proper weight. (Doc. 8, p. 7)  The Plaintiff states that the medical opinion of the treating physician, Dr. Sweetland cannot be ignored by the the ALJ and there is no evidence to the contrary. (Doc. 8, p. 7)  Plaintiff argues that Dr. Sweetland treated Plaintiff for three years including office treatments, administering assessment forms, performing a CT scan and an MRI and he also made office notes and gave opinion statements.  (Id.)  Plaintiff argues that more weight should be given to Dr. Sweetland than the doctors who consulted with Plaintiff on one occasion.  (Id.)

Specifically, the Plaintiff claims that Dr. Sweetland meets all of the requirements to have controlling weight for his medical opinion under 20 C.F.R. § 404.1527:  he has an examining relationship with Plaintiff and Dr. Sweetland was treating Plaintiff for three years.  (Id.)  Plaintiff further argues that where the "treating source's opinion on the issue(s) of the nature and severity of [the Plaintiff's] case record, [the Commissioner] will give it controlling weight," See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

We find, however, that substantial evidence exists which contradicts Dr. Sweetland's finding and supports the limited weight that the ALJ assigned to Dr. Sweetland when assessing the differing opinions of each physician.  At the outset, the ALJ correctly observed that Dr. Sweetland's opinion regarding Traub's condition was

very limited in its content, was not found by other treating or examining physicians, and it was not supported by his own treatment notes, (Doc. 7, pp. 281-312), notes that reflect that Dr. Sweetland did not find extreme objective findings related to Plaintiff's arthritis, degenerative joint disease, depression, or anxiety. (Id.)

Rather, Dr. Sweetland's notes often contained observations that were inconsistent with claims of disability.  For example, in March 2009, Dr. Sweetland noted that Plaintiff's diabetes mellitus was under control and did not change Plaintiff's medications or therapies. (Id. at pp. 281-312)  Dr. Sweetland reported that Plaintiff's diabetes and hypertension were stable or controlled on medication and on June 14, 2010, indicated that Plaintiff was to return to work or school. (Id. at pp. 281-312, 376-399)  The ALJ correctly noted that these clinical and objective findings are inconsistent with an individual who experiences debilitating symptomology as described by Plaintiff. (Id. at p. 23)  We agree.

Furthermore, this medical proof was contradicted by other evidence from numerous other medical sources.  Dr. James Martin noted that Plaintiff had arthritis in both of his knees and his hips, but stated that the Plaintiff's symptoms were out of proportion to the physical findings of soft tissue tenderness and his behavior out of line with the physical findings, therefore, he did not recommend surgery, but recommended an injection which Plaintiff declined.  (Id. at p 347-352)  Dr. Martin

further noted that Plaintiff did not experience any physical limitations.  (Id.)  Dr.

Fidelis Ejianreh also noted that Plaintiff did not have any physical limitations.  (Id. at

pp. 319-326)

Dr. Paul Sherbondy examined the Plaintiff in October 2009 and noted that the

Plaintiff's left knee is ligamentously stable with negative Lachman and normal global

stability, no effusion and negative flexion circumduction test and no pain on range of

motion of the hip.  (Id. at pp. 356-360)  Because the Plaintiff complained of daily pain

that affects his mobility and that physical therapy, injections and knee braces were all

ineffective, Dr. Sherbondy recommended a left knee arthroscopy.  (Id.)

The ALJ further properly examined the conflicting and contradictory evidence

relating to the Plaintiff's mental health impairments.  (Id. at pp. 19-22)  Plaintiff did

not have any records that revealed any severe or debilitating symptoms.  (Id. at pp.

216-220, 281-312, 313-318, 327-330)  The ALJ further noted that Plaintiff did not

receive any treatment from a mental health professional, such as a psychiatrist,

psychologist or therapist.  (Id.)  In addition, the ALJ found that Plaintiff did not

receive counseling or psychotherapy, emergency room treatment, inpatient psychiatric

hospitalization, partial hospitalization program, halfway house or supportive living

arrangement.  (Id.)

In our view, this countervailing evidence, which is both significant and persuasive, constitutes substantial evidence supporting the ALJ's ultimate decision, and, therefore, compels affirmance of that decision.

Beyond being adequately supported by the evidence, the ALJ's decision must must also be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. Thus, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). In this case we find that the ALJ's decision provided a full and complete statement of the evidence, individually assessed that evidence, and adequately explained which proof was found persuasive, and which evidence was discounted.

In particular, we conclude that the Plaintiff errs when he asserts that the ALJ did not properly consider the evidence provided by the treating physician. In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones. In Morales v. Apfel, 225 F.3d 310  (3d Cir. 2000), the Court of Appeals for the Third

Circuit set forth the standard for evaluating the opinion of a treating physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See Adorno, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Id. at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R.  § 416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length

of the treatment relationship and the frequency of examination must be considered.

The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(d)(2)(I).

> Additionally, the nature and extent of the treatment relationship is considered.

The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(ii).

We find that the ALJ properly applied these benchmarks when assessing the medical evidence received from Traub's treating physician. That ALJ opinion properly weighed this opinion, which conflicted with the views of other doctors, with

-27-

objective testing data, with Traub's own statements, and with the treating physician's own medical notes.  Moreover, the ALJ noted that the treating doctor's opinion was simply set forth in a summary fashion.  The ALJ did not err in reaching this conclusion.  Indeed, it is well-settled that an ALJ may assign little weight to a physician's terse notation of disability, particularly when other medical records tell a different and more complete story.  See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (two-page New Jersey Division of Rehabilitation form on which treating physician merely "check[s] boxes" and "fill[s] in blanks" was "weak evidence at best"); accord Plummer v. Apfel, 186 F.3d 422, 429-430 (3d Cir. 1999).

Furthermore, in deciding a claim for disability benefits, the ALJ is entitled to rely not only on what the record says, but also on what it does not say.  Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983); Lane v. Commissioner of Social Security, 100 Fed. Appx. 90, 95 (3d Cir. 2004).  Importantly, the ALJ noted that the Plaintiff could perform personal care activities, that Plaintiff could prepare simple meals, that Plaintiff does laundry weekly, that Plaintiff leaves home daily and Plaintiff is able to go out alone especially to doctor's appointments, and to drive.  (Doc. 7, pp. 145-155, 172-182)

Finally, the ALJ was entitled to give greater weight to the balance of the medical evidence which supported a finding that Traub retained a limited work

capacity. This other medical evidence, therefore, constitutes precisely the type of countervailing proof which is sufficient to allow an ALJ to reject a treating doctor's opinion. See Whitten v. Commissioner, 171 F. App'x 380, 381 (3d Cir. 2006)(denying disability claim in case involving hepatitis where other countervailing medical evidence contradicted treating physician's opinion.)

Since the ALJ's decision adequately addressed this conflicting and equivocal medical evidence, the medical evidence cited by Traub did not suggest that the ALJ's ultimate conclusion was unsupported by substantial evidence, and there is no legal requirement that the ALJ discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), this argument by Traub does not provide grounds for setting aside the ALJ's judgment when we scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## IV.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted, and the Commissioner's decision be upheld.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days

after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of February 2012.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge